DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Jessica Lamtman, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Ms. Lamtman is the natural mother of J.E., born May 29, 2006. The father of the child is not a party to this appeal. J.E. was removed from the home when he was five months old, and was later adjudicated a dependent child, due to *Page 2 
concerns that the child was developmentally delayed and Ms. Lamtman was unable to care for him due to her own cognitive limitations.
 {¶ 3} Similar concerns had caused the juvenile court to terminate Ms. Lamtman's parental rights to J.E.'s older sibling, J.L., in 2001. In that case, CSB had become involved with the family after Ms. Lamtman took J.L. to the hospital with a severe skin rash. J.L. was later diagnosed with eczema and multiple food allergies, conditions that required J.L.'s caregiver to monitor his diet and home environment and to maintain regular contact with his allergist. Ms. Lamtman did not seem to understand how to deal with J.L.'s medical needs. CSB was also concerned about Ms. Lamtman's failure to interact or express affection with J.L. and her inability to comfort him when he cried.
 {¶ 4} Throughout this case and the prior case involving J.L., CSB's concerns focused on Ms. Lamtman's limited cognitive ability, her inability to understand how to care for and stimulate her children, and her failure to interact or bond with them, particularly given that each child had special needs. CSB saw almost no improvement in Ms. Lamtman's parenting ability throughout the two cases.
 {¶ 5} According to the guardian ad litem in this case, what was most noticeable to her was the lack of emotional connection and lack of eye contact between Ms. Lamtman and J.E. Several witnesses had observed that Ms. Lamtman spoke very little to J.E., except to keep saying his name; she did not sing *Page 3 
or read to him or play with him; she did not face him when she spoke to him; and she spoke in a flat tone, with no emotion in her voice and without facial expression. In this case, unlike the prior case involving J.L., the agency had the added concern that J.E. was developmentally delayed in both his fine motor skills and gross motor skills. Although it had not yet been determined whether J.E.'s delays were caused by his environment, one witness explained that a lack of face-to-face contact with a young child will negatively impact the child's development of language and cognitive skills.
 {¶ 6} Ms. Lamtman had also failed to achieve any stability in her life throughout the two cases. She was unemployed, she did not drive, and she was dependent on others for transportation. Further, she had lived in seven different places during an 18-month period. She was apparently unable to work, as she had recently qualified for Social Security Disability benefits due to her mental retardation. Several witnesses explained that Ms. Lamtman seemed to be unable to care for her own needs, let alone those of her child, and she continued to be dependent on others and sometimes exercised poor judgment by trusting people who were not trustworthy.
 {¶ 7} Although Ms. Lamtman was often willing to take direction from CSB workers and other service providers when they attempted to correct her inappropriate behavior, she appeared to be unable to retain what she had been told, but would continue to display the same inappropriate behavior. CSB believed that *Page 4 
Ms. Lamtman would not be able to care for J.E. and that she did not understand or appreciate the significance of the child's developmental delays. J.E. was in need of a caregiver who would stimulate him and follow through with regular physical and occupational therapy, as he will need extensive therapy throughout his childhood.
 {¶ 8} Although CSB developed a case plan and initially worked toward reunification of Ms. Lamtman and J.E., the agency later sought and obtained a determination by the trial court that it was not required to make reasonable efforts to work toward reunification of the family because Ms. Lamtman's parental rights to a sibling of J.E. had been involuntarily terminated. See R.C. 2151.419 (A)(2)(e).
 {¶ 9} CSB moved for permanent custody of J.E. and Ms. Lamtman moved for a six-month extension of temporary custody. Following a hearing on both motions, the trial court found that J.E. could not be returned to Ms. Lamtman's custody within a reasonable time or should not be returned to her and that permanent custody was in J.E.'s best interest. Consequently, it terminated Ms. Lamtman's parental rights and placed J.E. in the permanent custody of CSB.
 {¶ 10} Ms. Lamtman appeals and raises four assignments of error, which will be consolidated and rearranged for ease of discussion. *Page 5 
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS DETERMINATION TO GRANT PERMANENT CUSTODY TO [CSB] UPON THE LIMITED COGNITIVE ABILITIES OF JESSICA LAMTMAN, AS STATED IN IN RE D.A."
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED IN GRANTING [CSB'S] MOTION FOR PERMANENT CUSTODY BECAUSE [CSB] FAILED TO MEET ITS BURDEN OF PROOF REQUIRING CLEAR AND CONVINCING EVIDENCE WITH REGARDS THAT J.E. CAN NOT AND SHOULD NOT BE REUNITED WITH MS. LAMTMAN. THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} Through her first and third assignments of error, Ms. Lamtman contends that the trial court's permanent custody decision was not supported by the evidence presented at the hearing.
 {¶ 12} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under *Page 6 
R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also,In re William S. (1996), 75 Ohio St.3d 95, 99. Ms. Lamtman does not challenge the trial court's best interest finding but argues only that the trial court's finding on the first prong of the permanent custody test was erroneous.
 {¶ 13} The trial court found that the first prong of the test was satisfied because J.E. could not be placed with either parent within a reasonable time or should not be placed with them. See R.C. 2151.414(E). When determining whether the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the juvenile court must find by clear and convincing evidence that at least one of the enumerated factors in R.C. 2151.414(E) exists as to each of the child's parents.
 {¶ 14} The trial court supported its finding that J.E. cannot be placed with Ms. Lamtman within a reasonable time or should not be placed with her with two factors under R.C. 2151.414(E): R.C. 2151.414(E)(2) and R.C. 2151.414(E)(11), which required the trial court to find the following conditions:
 "(2) Chronic * * * mental retardation * * * of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 "* * *
 "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child." *Page 7 
If the court finds that any of the conditions enumerated in R.C.2151.414(E) exist, the statute mandates that the court enter a finding that the child cannot or should not be placed with either parent within a reasonable time. In re Higby (1992), 81 Ohio App.3d 466, 469.
 {¶ 5} Ms. Lamtman challenges the trial court's finding under R.C.2151.414(E)(2) that her chronic mental retardation was so severe that it prevented her from providing an adequate permanent home for J.E. She does not dispute, however, that there was ample evidence before the trial court to support its finding under R.C. 2151.414(E)(11) that her parental rights to a sibling of J.E. had been involuntarily terminated in a prior proceeding. That alternate finding was sufficient to support the trial court's permanent custody decision, even if the court's finding under R.C. 2151.414(E)(2) was in error.
 {¶ 16} To demonstrate reversible error, Ms. Lamtman has the burden to demonstrate error as well as prejudice resulting from that error.Lowry v. Lowry (1988), 48 Ohio App.3d 184, 190, citing Gries SportsEnterprises, Inc. v. Cleveland Browns Football Co. (1986),26 Ohio St.3d 15, 28. "A prejudicial error is defined as one which affects or presumptively affects the final results of the trial." Miller v.Miller, 5th Dist. No. 06 CA 3, 2006-Ohio-7019, at ¶ 12 (Citations omitted). Because Ms. Lamtman does not dispute that the court's finding under R.C. 2151.414(E)(11) was supported by the evidence presented at the permanent *Page 8 
custody hearing and was sufficient to support the court's finding on the first prong of the permanent custody test, she cannot demonstrate reversible error.
 {¶ 17} Moreover, although Ms. Lamtman has asserted that her inability to parent J.E. is not her fault, the focus of R.C. 2151.414(E) is on the demonstrated ability or inability of the parent to provide a suitable home for the child. When a juvenile court determines, pursuant to R.C.2151.414(E), whether a child cannot be placed with either of his parents within a reasonable time or should not be placed with them, the court is not required to find parental fault. Instead, the court must determine whether there is clear and convincing evidence to establish the existence of any of the circumstances enumerated in R.C. 2151.414(E)(1) through (12). R.C. 2151.414(E) implicitly recognizes that the existence of certain circumstances in a child's home, regardless of parental fault, demonstrates an inability of the parents to provide for the child's basic needs.
 {¶ 18} Because Ms. Lamtman has not demonstrated any error by the trial court in its permanent custody decision, her first and third assignments of error are overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT [CSB] WAS NOT REQUIRED TO MAKE REASONABLE EFFORTS TO PREVENT J.E.'S CONTINUED REMOVAL FROM THE HOME ALLOWING [CSB] TO FILE FOR PERMANENT CUSTODY AT THE INITIAL DISPOSITION HEARING." *Page 9 
 ASSIGNMENT OF ERROR IV "[MS. LAMTMAN] WAS NOT PROVIDED WITH COMPETENT TRIAL COUNSEL."
 {¶ 19} Next, Ms. Lamtman asserts that the trial court erred in granting CSB's motion for a reasonable efforts bypass and that her trial counsel was ineffective for failing to timely raise this issue in the trial court.
 {¶ 20} Initially, this Court will note that the trial court did not rule on CSB's reasonable efforts bypass motion until six months after CSB filed its dependency complaint. During the six months prior to the trial court's ruling, CSB had developed a case plan for Ms. Lamtman, with a goal of reunification, and the agency had implemented reunification services. Thus, even though the trial court later excused CSB from working toward reunification, it does appear that the agency did make such efforts prior to the trial court's order.
 {¶ 21} Because Ms. Lamtman's parental rights to J.E.'s siblings had been involuntarily terminated in a prior case, R.C. 2151.419(A)(2)(e) provided that the trial court "shall make a determination that the agency is not required to make reasonable efforts" to prevent the continued removal of the child or to return the child home.
 {¶ 22} Ms. Lamtman maintains that some courts have held that the trial court has the authority to override this statutory mandate. See, e.g.,In re Nicholas P., 169 Ohio App.3d 570, 2006-Ohio-6213, at ¶ 36
(construing the language of R.C. 2151.419(A)(3) as giving the trial court discretion to override R.C. *Page 10 2151.419(A)(2)(e)). Even if this court were to follow that reasoning and hold that the trial court had the discretion to deny CSB's request for a reasonable efforts bypass, despite the mandate of R.C.2151.419(A)(2)(e), Ms. Lamtman would still have the burden of demonstrating that the trial court abused its discretion in failing to do so, or that her trial counsel was ineffective for failing to raise this issue below.
 {¶ 23} The reasonable efforts bypass issue was determined by a magistrate, and that decision was adopted by the trial court. Ms. Lamtman filed no objections to the magistrate's decision and no transcript was prepared of the hearing before the magistrate. Juv. R. 40(E)(3)(b)(iv) provides that, except in the case of plain error, a party may not assign as error on appeal the trial court's adoption of the magistrate's findings and conclusions unless that party has filed timely written objections in compliance with Juv.R. 40(D)(3)(b). Ms. Lamtman does not contend that the trial court's adoption of the magistrate's decision was plain error. Moreover, because there is no transcript of the evidence and arguments that were before the magistrate, this Court has no ability to consider the propriety of the magistrate's decision that it was appropriate in this case to excuse CSB from further reasonable efforts toward reunification of Ms. Lamtman and J.E.
 {¶ 24} Ms. Lamtman has failed to demonstrate any error in the trial court's decision to grant a reasonable efforts bypass or that her trial counsel was deficient *Page 11 
for failing to challenge the magistrate's decision below. The second and fourth assignments of error are overruled.
 III. {¶ 25} Ms. Lamtman's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 SLABY, J., DICKINSON, J., CONCUR *Page 1