[Cite as *In re D.K.*, 2013-Ohio-3513.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: D.K.
    C.S.
    C.S.
    C.S.
    C.K.

C.A. Nos.    26840
              26846

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN10-05-0356
              DN10-05-0357
              DN10-05-0358
              DN10-05-0359
              DN10-05-0360

DECISION AND JOURNAL ENTRY

Dated: August 14, 2013

HENSAL, Judge.

{¶1}    Appellants, Leslie G. ("Mother") and Michael K., have each appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights to five minor children, and placed them in the permanent custody of Summit County Children Services ("CSB"). This Court affirms.

I.

{¶2}    Mother is the parent of five children, currently ranging in age from 14 to 4: C.S., born February 16, 1999; C.S., born July 21, 2000, C.S., born August 26, 2002, C.K., born January 18, 2005, and D.K., born December 4, 2008. Michael K. is the biological father of the two younger children. Jason S. is the biological father of the three older children, but is serving

a lengthy prison sentence for kidnapping, two counts of rape, and assault, and he is not a party to this appeal.

{¶3} The children came into the emergency temporary custody of CSB on May 9, 2010, after police went to the home to investigate the reported presence of drugs. The police arrested Michael K. on an outstanding warrant and then searched the home, finding drug paraphernalia associated with the manufacture of methamphetamine. He was later charged with several drug offenses and five counts of child endangering. The police also arrested Mother and charged her similarly. The police took custody of the children under Juv.R. 6 and contacted CSB who initiated proceedings in juvenile court. The court adjudicated all five children to be dependent and neglected and placed them in the temporary custody of the agency. Meanwhile, Mother and Michael K. each entered a plea of guilty to one count of the illegal assembly or possession of chemicals for the manufacture of drugs and one count of child endangering. Each was sentenced to four years in prison.

{¶4} On February 9, 2011, after Mother and Michael K. had been sentenced on their criminal charges, CSB moved for permanent custody of the children. On December 30, 2011, the juvenile court granted permanent custody to CSB and terminated the parental rights of Mother, Michael K., and Jason S. Mother and Michael K. appealed. While the juvenile court case and appeal were progressing, Mother and Michael K. each sought and each was granted an early release from prison on condition of participating in a Reentry Program. Mother served 13 months in prison and was released to Reentry in December 2011. Michael K. served 18 months in prison and was released to Reentry in March 2012.

{¶5} On June 13, 2012, this Court reversed the judgment of the trial court because the court erroneously relied on an inapplicable factor under R.C. 2151.414(E) in support of its

finding that the children could not or should not be placed with a parent within a reasonable time. *See In re D.K.*, 9th Dist. Summit Nos. 26272, 26278, 2012-Ohio-2605, ¶ 7.

**{¶6}** On remand, CSB chose to proceed on the original motion for permanent custody. In addition, Michael K. moved for legal custody of his biological children. The trial court granted Michael K.'s request to supplement the record with new information relating to events occurring since the permanent custody hearing. Following a supplemental hearing, the court granted permanent custody of all five children to the agency. Mother appealed and assigned two errors for review. Michael K. also appealed and assigned one error for review.

## II.

### Mother's Assignment of Error I

> THE COURT ERRED IN GRANTING PERMANENT CUSTODY OF D.K., C.S., C.S., C.S., AND C.K. TO SUMMIT COUNTY CHILDREN SERVICES WHEN SUMMIT COUNTY CHILDREN SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT MOTHER FAILED TO REMEDY THE CONDITIONS THAT BROUGHT THE CHILDREN INTO SCCS CUSTODY.

### Mother's Assignment of Error II

> THE COURT ERRED IN GRANTING PERMANENT CUSTODY OF D.K., C.S., C.S., C.S., AND C.K. TO SUMMIT COUNTY CHILDREN SERVICES WHEN SUMMIT COUNTY CHILDREN SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN.

### Michael K.'s Assignment of Error I

> THE JUVENILE COURT ERRED BY GRANTING SUMMIT COUNTY CHILDREN SERVICES BOARD'S MOTION FOR PERMANENT CUSTODY BECAUSE THE ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT THE CHILDREN COULD NOT OR SHOULD NOT BE REUNIFIED WITH EITHER PARENT AND THAT THE GRANT WAS IN THE CHILDREN'S BEST INTEREST.

{¶7} In Mother's first assignment of error, she has argued that the trial court erred in finding that the children could not be placed with a parent within a reasonable time or should not be placed with a parent. *See* R.C. 2151.414(E)(1). The first part of Michael K.'s assignment of error addresses the same issue. In Mother's second assignment of error, she has argued that the trial court erred in finding that permanent custody was in the best interests of the children. The second part of Michael K.'s assignment of error addresses that issue. For purposes of clarity, the related arguments will be addressed together.

{¶8} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see, also, In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶9} The agency filed its initial motion for permanent custody after the children had been in temporary custody under R.C. 2151.414(B)(1) for seven months. Because the agency proceeded on the original motion for permanent custody after remand, the trial court could not find that the first prong of the permanent custody test was satisfied on the basis that the children had been in the temporary custody of the agency for at least 12 of the prior 22 months. *See* R.C. 2151.414(B)(1)(d). In addition, the court did not find that the children had been orphaned or abandoned by either Mother or Michael K. *See* R.C. 2151.414(B)(1)(b) and (c). Instead, in

support of the first prong of the permanent custody test, the court found that the children could not be placed with either of the children's parents within a reasonable time or should not be placed with either of their parents. *See* R.C. 2151.414(B)(1)(a)**.** In so doing, the trial court found that CSB had proven the conditions set forth in R.C. 2151.414(E)(1), (2), (5), (13), and (15). Because R.C. 2151.414(E) mandates that the trial court enter a finding that the children cannot be placed with either parent within a reasonable time or should not be placed with them if one of the enumerated conditions exists, clear and convincing evidence of any one of the trial court's five findings would support its decision on the first prong of the permanent custody test. *In re J.E.*, 9th Dist. Summit No. 23865, 2008-Ohio-412, ¶ 14.

{¶10} Because we find it to be dispositive, we address the finding under R.C. 2151.414(E)(1). Pursuant to the plain language of R.C. 2151.414(E)(1), a finding under this section must be premised on "reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home." *Id.* In this case, the agency created a case plan for Mother and Michael K. and provided numerous referrals to service providers to assist in implementing the case plan. The appellants have not disputed the reasonableness of the services provided or the diligence of the efforts by the agency to assist them in remedying the problems that caused the children to be placed outside the home. The trial court was required, therefore, to determine whether the parents have "failed continuously and repeatedly to substantially remedy the conditions causing the [children] to be placed outside [their] home" and also whether the parents' conduct has been sufficiently changed so as to allow them "to resume and maintain parental duties." *Id.* Parental utilization of the services provided under the applicable case plan shall be considered in making this determination. *Id.*

{¶11} Turning to "the conditions causing the [children] to be placed outside [their] home," it is apparent that the children were initially removed from the home of Mother and Michael K. under the authority of Juv.R. 6, due to the emergency conditions found by police who were investigating the possible presence of drugs in the home. *See* R.C. 2151.414(E)(1). The police first arrested Michael K. on an outstanding warrant. Then, after conducting a search of the home and finding material related to the manufacture of methamphetamine, they charged Mother and Michael K. each with several drug offenses and five counts of child endangering. Both parents were taken into custody and no one was available to care for the children. Each parent eventually entered a plea of guilty to reduced charges and was sentenced to four years in prison. The "conditions causing the [children] to be placed outside [their] home" included the fact that drug-related criminal charges were lodged against both adults in the home, the charges resulted in considerable prison sentences for each of them, this represented the third juvenile court intervention with the family in four years, and it represented the second time amphetamine-related charges were brought against these parents in that period of time. *See* R.C. 2151.414(E)(1).

{¶12} At the time of the remand from this Court, Mother and Michael K. had been released from prison and were involved in the Reentry Program. Regarding this case, the juvenile court adopted a reunification case plan that addressed the parents' criminal records, parenting issues, and substance abuse. In specific, the plan mandated that Mother and Michael K. must be compliant with the requirements of their Reentry Programs and not incur any new criminal charges. Mother's Reentry plan required her to obtain employment, maintain regular attendance in her GED and self-help classes, and pay the costs of the program. Michael K.'s Reentry plan required him to obtain employment, complete the substance abuse program, and

pay the costs of the program. Second, Mother and Michael K. were to complete parenting evaluations and follow-up with any recommendations in order to learn new skills and develop a plan to avoid putting the children at risk again. This component specifically recognized that this was the family's third juvenile court case in four years. Finally, Mother and Michael K. were to complete substance abuse assessments and follow-up with any recommendations.

{¶13} We first consider the evidence regarding Michael K. The Reentry caseworker testified that Michael K. participated in a chemical dependency assessment and completed several treatment programs. She explained that Michael K.'s criminal history, employment records, education, and prior substance abuse correlated to a high risk of recidivism.

{¶14} The psychologist who conducted Michael K.'s parenting assessment also addressed substance abuse, noting that he has a history of cocaine abuse and had been diagnosed with alcohol, amphetamine, and opioid dependence in full-sustained remission. Although he was in remission, the psychologist remarked that "once you have a dependency on a substance, you're always dependent[.]" She believed the primary issue that interferes with Michael K.'s ability to parent is that he was "heavily engaged in substance abuse and * * * was * * * arrested and incarcerated. * * * [I]t's unlikely that you can adequately parent if you're intoxicated or incarcerated." She further noted that Michael K. has had periods of sobriety in the past, but has returned to substance abuse. She explained that it was "especially important" for him to stay in a treatment or recovery program because he is at "high risk to relapse[.]"

{¶15} Michael K. did, in fact, have a relapse approximately six weeks before the hearing in this case. The caseworker testified that Michael K. self-reported a relapse into use of alcohol and opium between Christmas 2012 and New Year's Day. Michael K. asserted that his self-reporting of the incident is a positive factor in his recovery. As a result of the incident, however,

Michael K. was referred for another assessment of his chemical dependency and was advised to resume further treatment. At the time of the hearing, he was at the beginning of treatment following that relapse, having had had just one follow-up appointment since his assessment.

{¶16} As to employment, the Reentry caseworker testified that although Michael K. had done part-time home renovation work since his release from prison, he had obtained his full-time machinist job only a few days before the supplemental hearing. She reported that satisfaction of the Reentry Program requires maintenance of a longer period of regular employment than what he currently had.

{¶17} Based on Michael K.'s parenting assessment, the psychologist also recommended that Michael K. obtain counseling for anger management and better decision-making skills due to a diagnosis of antisocial personality disorder with characteristics of aggression and impulsivity. She believed that his reunification with the children should occur only upon the condition that he complete counseling for both mental health and substance abuse, as well as that he obtain and maintain stable housing, remain compliant with the terms of the Reentry Court, abstain from drugs and alcohol, submit to random testing, and that CSB stay involved to monitor the transition. The CSB caseworker testified that, at the time of the supplemental hearing, Michael K. had not completed the counseling portion of his case plan. She stated that Michael K. spent three weeks choosing a counseling agency, made two appointments at Greenleaf in December 2012, and then failed to appear. His case at Greenleaf was closed. He apparently began counseling at another agency only very recently.

{¶18} For his part, Michael K. pointed to evidence that he had successfully completed numerous rehabilitative programs, both in prison and through his Reentry Program, and that he had been employed since his release from prison. Since Jason S. is no longer seeking custody of

his biological children, he affirmed his desire to have Mother and all five children live together with him in a rental home that he had lined-up, and he reported that he had all the supplies in storage. He stated that he felt it was his responsibility to step up and be the father he should be. He feels that on a statistical basis, children are "doomed" in foster care, and he would like for these children to have their parents back. The brother of Michael K. testified in his support. He stated that he had observed his brother interacting well and affectionately with all five children. He believes his brother loves the children and wants them back.

{¶19} Next, we consider the evidence regarding Mother. The Reentry caseworker testified that Mother participated in a chemical dependency assessment and completed a number of treatment programs. She explained that based on Mother's criminal history, employment records, education, and prior substance abuse, she had a moderate risk of recidivism. At the time of the supplemental hearing, Mother had not obtained employment and had recently been non-compliant in attending her GED classes.

{¶20} Testimony from the psychologist who conducted Mother's parenting evaluation in October 2010 revealed that she had been diagnosed with amphetamine dependence, alcohol abuse, and a borderline personality disorder. The psychologist recommended that Mother complete individual counseling to help improve judgment, decision making, coping skills, emotion regulation, relationship boundaries, and boundaries with her children. He also recommended couples counseling to improve communication and their ability to parent together, as well as to learn appropriate parenting skills. The psychologist specifically cited Mother's need to learn appropriate discipline techniques and how to manage her children's mental health problems, including ADHD. At least three of the children had been in counseling since the separation. As an example of Mother's approach to discipline, he mentioned her idea of sending

a child to his or her room for up to 12 hours. The psychologist did not recommend that the children should be returned to the home based on Mother's then current functioning and the long-standing nature of her problems. Mother was sentenced to prison shortly after the evaluation was completed and did not return for treatment.

{¶21} Mother has also been diagnosed with depression and has been prescribed medication to assist her functioning levels. Mother has failed, however, to consistently take her prescribed medication. In addition, she was not regularly attending her counseling sessions or her medical appointments. According to the CSB caseworker, Mother reported that she finds counseling to be helpful, but her depression sometimes prevents her from attending. The Reentry caseworker similarly reported that Mother attributes her missed appointments to a general lack of motivation, which is affected by her depression. For her part, Mother took the stand and admitted that she sometimes cannot get motivated and stated that it may be because she is not taking her medication. In light of Mother's inability to meet her own needs, the CSB caseworker expressed concern with Mother's ability to care for five children.

{¶22} In response, Mother argues that her depression did not bring the children into custody, but rather that the parents' drug use and legal difficulties were the reason for removal and those issues had been remedied. She claims that she utilized rehabilitative services available to her and changed her conduct to the point that she can appropriately parent her children.

{¶23} Although Mother implicitly suggests that her depression is unrelated to the ongoing substance abuse problems which caused the removal of the children, even assuming that premise valid, in applying R.C. 2151.414(E)(1) to this case, the trial court was not constrained to consider only the immediate reasons for removal, but rather could consider all the conditions that caused the children to be placed outside the home. This Court has previously emphasized that

R.C. 2151.414(E)(1) will "encompass not only the conditions that led to the initial removal of the children from the home, but also problems with the home environment that the agency identified after the children's removal, which caused the juvenile court to continue its placement of the children outside the home." *In re J.H.*, 9th Dist. Summit No. 24555, 2009-Ohio-2223, ¶ 9, citing *In re A.C.*, 9th Dist. Summit No. 23627, 2007-Ohio-5525, ¶ 17-22. Moreover, the trial court was entitled to consider that Mother failed to utilize medical and psychological resources that were made available to her "for the purpose of changing parental conduct to allow [her] to resume and maintain parental duties." R.C. 2151.414(E)(1). In particular, Mother's failure to properly address her depression had significant negative consequences to her own behavior and created a reasonable concern regarding her ability to care for her children. The parenting component of Mother's case plan specifically recognized that this was the family's third juvenile court case in four years and indicated that the parents were to address the need to avoid putting the children at risk again. The trial court was entitled to consider whether Mother's failure to properly address her depression might put her children at risk once again.

{¶24} For her part, Mother testified that she loves her children, concedes that she "screwed up," and believes she needed prison, but does not deserve to lose her children forever. She spoke about the programs she attended in prison and in the Reentry Program. She testified that she continues to seek employment and that, as a back-up plan, she could live with the children in a trailer she inherited from her father.

{¶25} Upon review, this Court concludes that the trial court had ample evidence before it to support its conclusion that the parents had failed to substantially remedy the conditions that caused the children to be placed outside the home. Furthermore, neither parent was able to resume and maintain parental duties. *See* R.C. 2151.414(E)(1). Therefore, the trial court was

required by R.C. 2151.414(E) to conclude that the children could not be placed with either parent within a reasonable time or should not be placed with a parent.

{¶26} After the trial court found that the children could not be placed with either parent due to one or more of the factors under R.C. 2151.414(E), the court was required to determine whether permanent custody was in the children's best interests. Mother's second assignment of error and the second part of Michael K.'s assignment of error challenge the trial court's finding that permanent custody was in the best interests of the children. When determining whether a grant of permanent custody is in the children's best interests, the juvenile court must consider all the relevant factors, including those enumerated in R.C. 2151.414(D): the interaction and interrelationships of the children, the wishes of the children, the custodial history of the children, and the children's need for permanence in their lives. *See In re R.G.*, 9th Dist. Summit Nos. 24834 & 24850, 2009-Ohio-6284, at ¶ 11.

{¶27} While Mother and Michael K were incarcerated, the children visited with a maternal aunt and maternal grandmother. Following their releases from prison, the parents and the children had supervised visits at the homes of the two maternal relatives. At the initial hearing, there was evidence that Mother was sometimes frustrated that the children failed to mind her at visits. The record nevertheless indicates that the children were strongly bonded to each other, to Mother, and also to Michael K. Even Michael K.'s non-biological children viewed him as a father-figure. At the supplemental hearing, there was no criticism of the interaction between the parents and children.

{¶28} The psychologist who conducted Michael K.'s parenting evaluation acknowledged that he seemed sincere in accepting responsibility for his past poor decisions and in his motivation to change. However, the psychologist also observed that it was "especially

important" for Michael K. to stay in a treatment or recovery program because of his "high risk to relapse[.]" Significantly, she believed that he should only be reunified with his children upon completion of individual counseling for both mental health and substance abuse and if he abstained from drugs and alcohol. At the time of the supplemental hearing, he had done neither.

{¶29} Prior to the first permanent custody hearing, the guardian ad litem reported that the children were having numerous behavioral difficulties. The oldest child had been suspended from school three times and was being defiant to the foster parents, the second oldest had migraine headaches, the middle child had threatened suicide, and several of the children had poor grades. At that time, the guardian ad litem recommended that the trial court should grant permanent custody of the children to CSB. Because the older children had expressed a wish to be reunited with the parents, an independent attorney was representing them.

{¶30} Upon remand, the same guardian ad litem urged reunification of the children with Mother and Michael K. He reported that the four oldest children had "stated clearly and passionately they desired to return to live with their natural parents." He believed the youngest child was too young to express an opinion. Because the guardian ad litem now agreed with the children's wishes, as he understood them, the children's attorney was permitted to withdraw from the proceedings. The guardian ad litem explained his change of position by observing that he had not had an opportunity to observe the parents and children together before the last hearing because the parents were incarcerated, but now he has seen that Mother and Michael K. share a very strong bond with the children. Even more, he testified that the five children are "very tight-knit" and he did not believe they should be separated. The guardian ad litem testified that he believed returning the children to Mother and Michael K. would be in their best interests at this time. He based his decision on getting the children into a "final home," the extremely strong

bond that exists among the children, and the lessons he believed the parents had learned. He supports giving the parents "one more chance."

{¶31} In weighing the testimony of the guardian ad litem, it may be observed that he was the first witness to testify at the supplemental hearing. The parties agreed to this unusual timing of the guardian ad litem's presentation to accommodate the fact that he was ill and had a medical appointment later in the day. By testifying first, however, the guardian ad litem did not hear any of the other testimony before expressing his final opinion. In addition, the guardian ad litem conceded that he had not talked to the caseworker during the case, was not aware that the parents had a case plan to follow subsequent to the remand, and observed that the children's behavior and school grades had improved in the last year while they have been in foster care.

{¶32} In addition, the CSB caseworker did not believe that the children are as settled in their desire to live with the parents as the guardian ad litem expressed. She testified that the oldest child recently told her that she no longer wants to return to live with Mother and Michael K. because she is worried that the same things would happen again. Rather, she was "okay" with staying in the foster home. Also, according to the caseworker, the next three children preferred to stay with either the aunt or grandmother than to live with Mother.

{¶33} The custodial history of the children includes the fact that the family had two prior cases with CSB. *See In re K.W.*, 9th Dist. Summit No. 23613, 2007-Ohio-3626, ¶ 3. The children had previously been removed from their home in April 2006 due to drug involvement by Mother and Michael K. The agency also found that the family's home had no electrical service at that time. The children were placed with the maternal aunt for 14 months. In 2008, the children were placed under the protective supervision of CSB after Mother was found to have

physically abused her oldest child. In the current matter, the children have been in foster care since May 2010.

{¶34} The children have had an unsettled existence for much of their lives, but have now resided with the same foster family for nearly three years. The youngest child has spent more time with the foster family than with her parents. The foster family has expressed a willingness to adopt all five children if permanent custody is granted to the agency. Further, in the event the foster parents obtained custody, they offered to permit continuing contact with the family. The guardian ad litem suggested that maintaining the bond among the children was of paramount importance. There were no friends or relatives willing and able to care for the children on a permanent basis. Thus, the trial court reasonably concluded that a legally secure permanent placement could only be achieved through a grant of permanent custody to CSB.

{¶35} Finally, the CSB caseworker testified that she believed permanent custody would be in the best interests of the children, essentially for the same reasons that she expressed in the prior hearing. Her primary reason is that this is her third case with this family over the course of seven years. Significantly, she explained that in each case the parents had complied with every objective in their case plans. The parents completed all kinds of services, including in-home counseling and parenting classes, and yet they are back in this situation. She explained that both parents started off well in this case with good reports from the Reentry Court, and yet in the past two weeks, each has had setbacks and has been non-compliant with services. Mother had not been attending counseling, even though she acknowledged that it was helpful. Michael K. was recently referred for a new drug assessment due to a relapse and has not yet begun the counseling recommended in his parenting evaluation. She believes that the parents have no firm plans for

housing. In sum, she believes that the parents have not remedied the conditions that caused removal of the children from the home and that they cannot take care of the children at this point.

{¶36} The evidence before the trial court established that the children could not be placed with their parents within a reasonable time or should not be placed with them and also that permanent custody was in the children's best interests. Consequently, the trial court did not err in terminating the parental rights of Mother and Michael K. and in placing the children in the permanent custody of CSB. Mother's two assignments of error are overruled. Michael K.'s sole assignment of error is overruled.

### III.

{¶37} Mother's two assignments of error are overruled. Michael K.'s assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

MADELINE LEPIDI-CARINO, Attorney at Law, for Appellant.

CHRISTOPHER M. VANDEVERE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.