[Cite as *In re G.D.*, 2014-Ohio-3476.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: G.D.
      G.D.

C.A. No.     27337

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN13-01-0083
                   DN13-01-0084

DECISION AND JOURNAL ENTRY

Dated: August 13, 2014

WHITMORE, Judge.

{¶1}    Appellant, James Z. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his two minor children in the permanent custody of Summit County Children Services Board ("CSB"). Because CSB failed to present clear and convincing evidence to support any of the grounds it alleged for permanent custody under R.C. 2151.414(E), this Court reverses and remands for a new hearing.

I

{¶2}    Father is the natural father of twins, each with the initials G.D., born January 23, 2013. The twins were removed from their parents' custody while they remained hospitalized after birth. The children's mother is not a party to this appeal.

{¶3}    CSB's complaint in this case alleged that the mother had used drugs throughout her pregnancy and had failed to obtain proper prenatal care. It further alleged that the parents

had recently moved from Florida, where they had an "extensive history" with the department of children and families because Father had sexually abused two of the mother's older children, one of whom was alleged to be Father's natural child.

{¶4} CSB proceeded to focus its case against Father on his alleged criminal conduct in Florida against a sibling of these children. Throughout the record, however, the details pertaining to Father's arrest and criminal prosecution are extremely vague. Notably, most of the details about Father's criminal offense are in the form of unsubstantiated allegations by CSB. This Court necessarily confines its review to the facts and evidence set forth in the record.

{¶5} The record reflects that both parents appeared at the shelter care hearing and agreed that there was probable cause for the children to remain in the emergency temporary custody of CSB. They did not stipulate to the truth of any facts alleged in the complaint, however, nor did the shelter care order set forth specific reasons for continuing the emergency removal of the children.

{¶6} Prior to the adjudicatory hearing, Father was apparently arrested and incarcerated because his counsel filed a motion requesting that Father be transported from the Summit County Jail to the adjudicatory hearing. The matter proceeded to an adjudicatory hearing before a magistrate, without Father in attendance. After the hearing, the magistrate decided that G.D. and G.D. were dependent children. That finding was adopted by the trial court and was not challenged by written objections.

{¶7} The magistrate's adjudicatory decision stated that the mother stipulated to an adjudication of dependency. The facts pertaining to Father were merely that he was unable to care for the children because he had a history of "serious criminal charges" and had been extradited to Florida "on a charge of sexual battery."

{¶8} After the dispositional hearing, the magistrate decided to place the children in the temporary custody of CSB and to adopt the case plan except that "Father's objectives will be removed * * * [because] he has been extradited to Florida [and] is not expected to return to Ohio in the near future." The decision included no additional facts about Father's criminal prosecution. The trial court adopted the magistrate's decision and neither party filed objections.

{¶9} On August 2, 2013, CSB moved for permanent custody of G.D. and G.D. Because the children had not yet been in its temporary custody for 12 months, CSB alleged that they could not be returned to their parents' home or should not be returned to their custody based on several factors under R.C. 2151.414(E). It alleged grounds pertaining to Father under R.C. 2151.414(E)(1), failure to substantially remedy the conditions that caused the children's removal; R.C. 2151.414(E)(4), a lack of commitment to the children; R.C. 2151.414(E)(5), incarceration for an offense against one of the children or a sibling; R.C. 2151.414(E)(10), abandonment; R.C. 2151.414(E)11), parental rights involuntarily terminated with respect to a sibling of the children; and R.C. 2151.414(E)(16), any other factor the court finds relevant.

{¶10} At the permanent custody hearing, CSB attempted to prove that the parents' rights had been involuntarily terminated as to a sibling of these children, but it offered only an uncertified copy of a purported Florida judgment to that effect, which was not admitted into evidence. Because no other evidence about the prior termination of parental rights was presented, the trial court did not find that CSB had established that factor. The trial court found that the children could not or should not be placed with Father based on three alternate factors under R.C. 2151.414(E): he had failed to substantially remedy the conditions that caused the children's removal from the home, he demonstrated a lack of commitment to them, and he was incarcerated for a criminal offense against a sibling of the children. *See* R.C. 2151.414(E)(1),

(E)(4), and (E)(5). The trial court also found that permanent custody was in the best interests of G.D. and G.D. Consequently, it terminated parental rights and placed the children in the permanent custody of CSB. Father appeals and raises one assignment of error.

II

Assignment of Error

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED FATHER'S PARENTAL RIGHTS AS THE [DECISION] WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} Father's sole assignment of error is that the trial court's permanent custody decision was not supported by the evidence presented at the hearing. We agree.

{¶12} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13} As we have emphasized before, although CSB and the trial court may have known more facts about this case than what is reflected in the record on appeal, our review is necessarily

limited to the record. *In re T.R.*, 9th Dist. Summit Nos. 25179 & 25213, 2010-Ohio-2431, ¶ 25. "The agency has an obligation to establish its case on the record and to demonstrate clearly and convincingly that ending this family relationship is what is best for * * * these children." *Id.*

{¶14} Whether Father's parental rights should be preserved is not the question before us in this appeal, for Father had no burden to prove anything. Instead, the focus of this appeal is whether CSB met its burden to prove, by clear and convincing evidence, that termination of parental rights was warranted. *In re A.A.,* 9th Dist. Summit App. No. 22196, 2004-Ohio-5955, ¶ 19. Based on this Court's review of the record before us, we must conclude that CSB failed to present even a preponderance of evidence to support the trial court's findings under R.C. 2151.414(E), much less under its heightened burden of clear and convincing evidence.

{¶15} The trial court found that CSB had established that G.D. and G.D. could not be returned to either parent within a reasonable time or should not be returned to them based its factual findings under R.C. 2151.414(E)(1), (E)(4), and (E)(5). Because Father challenges the trial court's findings on each alternate factor, we will address each in turn.

### R.C. 2151.414(E)(1)

{¶16} To establish the factor set forth in R.C. 2151.414(E)(1), CSB was required to prove that, after the placement of the children outside the home and "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents[,] * * * the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child[ren] to be placed outside the[ir] home." To begin with, although CSB had alleged a few reasons for removing the children from the home, the reasons for the children's removal are those set forth in the adjudicatory decision. *See In re Rinaldi*, 3d Dist. Allen No. 1-02-74, 2003-Ohio-2562, ¶ 37. The only factual findings set forth in the adjudicatory decision to explain why the children

were adjudicated dependent and removed from the home were that the mother agreed to the adjudication and that Father was incarcerated at that time. Although R.C. 2151.28(L) required that a more detailed factual basis be set forth in the adjudicatory decision, neither parent filed objections on that basis. *See* Juv.R. 40(D)(3)(b)(iv). Nevertheless, the decision as adopted by the trial court does not detail the "conditions" that caused the children's removal.

{¶17} Moreover, "[p]ursuant to the plain language of R.C. 2151.414(E)(1), a finding under this section must be premised on 'reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home.'" *In re D.K.*, 9th Dist. Summit Nos. 26840 & 26846, 2013-Ohio-3513, ¶ 10. "Parental utilization of the services provided under the applicable case plan shall be considered in making this determination." *Id.*

{¶18} The caseworker testified at the permanent custody hearing that Father had failed to comply with several requirements of the case plan. Although Father was initially included on the proposed case plan filed by CSB, and Father had apparently made attempts to comply with the requirements of that plan, that case plan was never adopted by the trial court. At the time the trial court adopted the case plan in its initial dispositional order, Father was removed from the case plan because he was incarcerated.[1] Because Father was not included on the case plan and received no court-ordered reunification services, there was no evidence before the trial court to support a finding under R.C. 2151.414(E)(1).

---

[1] Because Father has not assigned this as error, we do not reach the issue of whether the trial court had authority to remove Father from the case plan. *See In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-2749. Although CSB's allegations suggest a basis for a reasonable efforts bypass under R.C. 2151.419(A)(2)(e), no such finding was made by the trial court.

## R.C. 2151.414(E)(4)

{¶19} R.C. 2151.414(E)(4) required CSB to prove that Father had demonstrated a lack of commitment by failing to regularly support, visit, or communicate with the children "when able to do so" or by "other actions showing an unwillingness to provide an adequate permanent home for the child[ren]." Father does not dispute that, since his incarceration before the adjudicatory hearing, he has not visited, supported, or communicated with his children. He correctly argues, however, that his failure to maintain that contact with his children did not establish a lack of commitment under R.C. 2151.414(E)(4) because CSB failed to prove that he had the ability to visit, support, or communicate with his children.

{¶20} It is apparent that Father lacked the ability to visit his infant children while he was incarcerated in Florida. Consequently, CSB had the burden to prove that, despite his incarceration in Florida, Father had the ability to support or communicate with G.D. and G.D. *In re Sara H.*, 6th Dist. Lucas No. L-94-116, 1994 WL 700629, *5. CSB presented no evidence about Father having the ability to send financial support or to communicate with his infant children from the various jails and prisons where he was apparently incarcerated throughout this case. The record does demonstrate that Father sent letters to CSB to inquire about his children's case.

{¶21} Relying on this Court's decision in *In re T.K.*, 9th Dist. Summit No. 24006, 2008-Ohio-1687, ¶ 9-13, CSB suggests that Father demonstrated a lack of commitment to his children by failing to make efforts to be reunified with them. Unlike the parent in *In re T.K.*, who was included on the case plan and was incarcerated during only part of the case, Father was incarcerated throughout the case planning process and was not included in the court-ordered case plan. Father cannot be faulted for failing to comply with nonexistent case plan requirements.

Consequently, CSB failed to prove that Father demonstrated a lack of commitment to his children under R.C. 2151.414(E)(4).

### R.C. 2151.414(E)(5)

{¶22} Finally, the trial court found that CSB had proven that Father was incarcerated for committing an offense against a sibling of the children. R.C. 2151.414(E)(5). Despite the serious nature of this permanent custody ground and the relative ease with which this fact, if true, could have been established at the hearing, Father correctly argues that CSB failed to present evidence to establish this factor. Specifically, although CSB presented brief testimony that Father was incarcerated in Florida for committing sexual offenses against "two other children," it presented no evidence that either of those children was a sibling of G.D. and G.D.

{¶23} CSB's only witness at the hearing was the ongoing caseworker. Its questioning of her focused in large part on the fact that the parents initially lied to her about their past involvement with a children services agency in Florida and about their prior criminal records. The evidence pertaining to Father's relevant criminal offense, however, was minimal. The caseworker testified that Father was arrested on February 26 for "past sexual abuse charges in Florida against two other children" and that he was extradited to Florida in March and had been in Florida ever since. She stated later that Father was being prosecuted in Florida for "six counts of sexual abuse against children."

{¶24} In response to a question about whether Father and the mother had other children, the caseworker testified that the parents had told her that the mother had "two other children," one of whom was also Father's child, and that "they were in the custody of other people in Florida." She later testified that one of the children was living with a relative and one of them

had been adopted. The caseworker never explained why these other children resided outside their parents' custody.

{¶25} While the caseworker was testifying about the prior termination of parental rights, CSB attempted to admit a document that purported to be a Florida court judgment that terminated the parents' rights to the two children in Florida. Although that document may have indicated a reason for the termination (which may or may not have been Father's alleged offense(s) against a sibling), the trial court sustained defense counsel's objection to the admission of that document because it was not a certified judgment entry. Consequently, whatever details that may have been included in that judgment were not admitted into evidence and are not part of the record.

{¶26} CSB does not seem to dispute that it presented no direct evidence that the victims of Father's offenses were the siblings of G.D. and G.D. Instead, it suggests that the sibling relationship of the victims was established circumstantially through the testimony of the caseworker. CSB asserts that, because the caseworker testified that Father's offense was against "two other children" in Florida and, almost immediately afterward, testified that the parents had "two other children" in Florida who were removed from their custody, it is reasonable to infer that both references to "two other children" referred to the older siblings of G.D. and G.D.

{¶27} "Inferences to be drawn from circumstantial evidence are unreasonable or speculative if they are not supported by the surrounding facts in evidence." *State v. Rohr-George*, 9th Dist. Summit No. 23019, 2007-Ohio-1264, ¶ 21. Although it may be *possible* to infer that both of the caseworker's references to "two other children" referred to the older siblings of G.D. and G.D., we cannot agree that it would be *reasonable* or *logical* to draw such an inference from this evidence. Aside from the temporal proximity of these two testimonial

statements, the caseworker said nothing to connect her "other children" references and there were no other facts in evidence to suggest that she was referring to the same two children. In fact, it would be more reasonable to infer that, if the caseworker had intended to refer to the same two "other children," she would have said so. Consequently, we cannot agree that this evidence clearly or convincingly demonstrated that the victims of Father's offenses were siblings of G.D. and G.D.

{¶28} CSB points to other statements in the record that are of no evidentiary value. Although there are allegations throughout the record that Father had sexually offended against a sibling of G.D. and G.D., that his parental rights to that sibling had been involuntarily terminated for that reason, and that the offenses had led to his arrest, incarceration, and eventual conviction, those unsubstantiated allegations do not constitute evidence. An "allegation" in the complaint is nothing more than "a party's formal statement of a factual matter as being true or provable, without its having yet been proved." *Black's Law Dictionary* 81 (8th Ed.2004).

{¶29} Similarly, brief factual statements in the report of the guardian ad litem that Father had sexually offended against a sibling of these children do not constitute evidence of that fact. The role of the guardian ad litem is to "assist a court in its determination of a child's best interest" by providing the court with relevant information and "an informed recommendation" about the children's best interest. Sup.R. 48(B) and (D)(13). Although the report of the guardian ad litem may necessarily include information about what other people told her, reliance upon her report as establishing those things as fact is improper. *See In re O.H.*, 9th Dist. Summit No. 25761, 2011-Ohio-5632, ¶ 25. "[T]his Court is unaware of any legal authority that permits the guardian ad litem to offer evidence of 'facts' about which she has no first-hand knowledge." *Sypherd v. Sypherd*, 9th Dist. Summit No. 25815, 2012-Ohio-2615, ¶ 13; Evid. R. 602.

**{¶30}** Because CSB failed to present evidence to support any of the trial court's alternate findings under R.C. 2151.414(E), we must reverse and remand for a new hearing. Because CSB failed to establish the first prong of the permanent custody test, we need not reach Father's argument that CSB also failed to present clear and convincing evidence that permanent custody was in the best interests of his children. Father's assignment of error is sustained.

III

**{¶31}** Father's assignment of error is sustained. The judgment of the trial court is reversed and remanded for a new hearing.

Judgment reversed,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
MOORE, J.
CONCUR.


APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.