DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Cynthia Rohr-George, appeals from her conviction in the Summit County Court of Common Pleas of complicity to murder with a firearm specification. We reverse and remand because, although the state established that Rohr-George's current lover murdered her former lover, it failed to present sufficient evidence that Rohr-George solicited or procured him to commit the murder.
 {¶ 2} On the afternoon of June 16, 2001, Jeff Zack was fatally shot in the face while sitting in his automobile at the gasoline pumps at BJ's Wholesale Club in Akron. Several witnesses heard a loud noise and saw a green and black striped *Page 2 
"ninja-style" motorcycle come through the area at the time of the homicide, and the driver of the motorcycle was seen near Zack's vehicle. The assailant quickly fled the area, and no witnesses were able to identify the motorcycle driver because he had worn a dark helmet and clothing that covered him from head to toe.
 {¶ 3} Approximately one year after the murder, circumstantial evidence began to implicate John Zaffino as the killer. For example, Zaffino owned a motorcycle that was identified as the one driven by Zack's killer and, the day after the murder, Zaffino disguised the motorcycle with duct tape, drove it to Pennsylvania, and left it with his ex-wife there. Zaffino had also threatened Zack before the murder, by beating him up at least once and by leaving a threatening message on Zack's answering machine a few days before the murder.
 {¶ 4} Zaffino was convicted of Zack's murder and this Court affirmed his conviction on appeal. See State v. Zaffino, 2003-Ohio-7202, 9th Dist. No. 21514. After Zaffino's conviction, the state discovered additional evidence that he had solicited another man during the two days before and even the day of the murder to help him "rough up" Zack, but the man refused to help.
 {¶ 5} The only connection between Zack and Zaffino appeared to be their relationships with Rohr-George. Both the victim, Jeff Zack, and his killer, John Zaffino, had been involved in a secret romantic relationship with Rohr-George, wife of a prominent local restaurateur. Zaffino had never directly admitted his *Page 3 
own involvement in the murder, he had never implicated Rohr-George, nor had Rohr-George made incriminating statements to authorities.
 {¶ 6} On January 5, 2005, almost two years after Zaffino was tried and convicted of murder, the grand jury indicted Rohr-George for conspiracy to commit murder and complicity to murder, with firearm specifications attached to each charge.
 {¶ 7} During the bench trial, Rohr-George moved for a judgment of acquittal on both charges. The trial judge granted a judgment of acquittal on the conspiracy charge, but found Rohr-George guilty of complicity to murder and convicted her accordingly.
 {¶ 8} Rohr-George appeals and raises five assignments of error. We will confine our review to her third assignment of error, however, as it is dispositive of the entire appeal.
 Third Assignment of Error "THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A FINDING OF GUILT AND[,] AS A RESULT[,] THE FEDERAL CONSTITUTION AND THE OHIO CONSTITUTION REQUIRE THE CONVICTION TO BE REVERSED WITH PREJUDICE TO FURTHER PROSECUTION."
 {¶ 9} Through her third assignment of error, Rohr-George contends that the evidence was insufficient to sustain a conviction of complicity to murder pursuant to R.C. 2923.03(A)(1), because the state failed to prove that she solicited or procured Zaffino to murder Jeff Zack. Rohr-George contends that, even if the *Page 4 
state proved that Zaffino killed Zack, it did not present sufficient evidence that she solicited or procured Zaffino to commit the murder.
 {¶ 10} The conspiracy charge is not before this Court because the trial court acquitted Rohr-George of conspiracy to commit murder. Based on allegations that Zaffino and Rohr-George had planned Zack's murder together, the state had also indicted Rohr-George for conspiracy to commit murder. The trial court found, however, that pursuant to R.C.2923.01, the evidence was legally insufficient to establish that, with purpose to commit or facilitate murder, Rohr-George had agreed with Zaffino that one or both of them would engage in conduct that facilitated the murder and that a substantial overt act was committed in furtherance of the conspiracy. The trial court offered no clear explanation as to why it found the evidence insufficient to establish a conspiracy but sufficient to prove that Rohr-George solicited or procured Zaffino to commit the murder.
 {¶ 11} Another matter not before us is whether the evidence was sufficient to sustain a conviction of complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), for Rohr-George was not even indicted for that crime. Each party adds confusion to the legal arguments on appeal by citing State v. Johnson (2001), 93 Ohio St.3d 240, 245, a case that reviewed the evidence presented to convict a defendant of complicity under R.C. 2923.03(A)(2). In their appellate briefs (Appellee's Brief at p. 22; Appellant's Reply Brief at p. 8), each party quoted the same passage from Johnson that aiding and abetting requires proof that the *Page 5 
defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime," suggesting that such actions by Rohr-George would have been sufficient to support a conviction in this case. See Johnson, 93 Ohio St.3d 240, at syllabus. Any evidence tending to show guilt of aiding and abetting, however, is not necessarily significant in relation to the crime with which Rohr-George was charged. Knowing about the crime, and even helping another to commit an offense, does not establish soliciting or procuring.
 Complicity under R.C. 2923.03(A)(1) {¶ 12} It must be emphasized that the only offense before us on appeal is complicity to murder under R.C. 2923.03(A)(1). Rohr-George was convicted under R.C. 2923.03(A)(1), which provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [s]olicit or procure another to commit the offense[.]" Thus, the state was required to prove, beyond a reasonable doubt, that Rohr-George, acting with the specific intent to cause Jeff Zack's death, solicited or procured Zaffino to kill Zack and that Zaffino did, in fact, kill him. Rohr-George does not dispute the state's proof that Zaffino killed Zack. Her sole challenge is that there was insufficient evidence before the trial court that she intentionally solicited or procured Zaffino to commit the murder.
 {¶ 13} The terms "solicit" and "procure" are not defined in the statute. Consequently, this Court will look to the definitions set forth in the Ohio Jury *Page 6 
Instructions, as the trial court did. The Ohio Jury Instructions define "solicit" to mean "to seek, to ask, to influence, to invite, to tempt, to lead on, to bring pressure to bear." "Procure" means "to get, obtain, induce, bring about, motivate." 4 Ohio Jury Instructions (2004) Section 523.03(6) and (7). Given these definitions, a conviction of soliciting or procuring another to commit murder requires proof that the accomplice went looking for a principal to commit the crime, or tempted, pressured, induced, motivated, or invited another person to commit the murder.
 {¶ 14} In contrast to aiding and abetting, which can consist of intentionally assisting, facilitating, or backing up the murderous actions of another, one who solicits or procures a murder is the instigator or the impetus behind the crime. See 4 Ohio Jury Instructions (2004) Section 523.03(8). He or she is the one who sets the crime in motion. Although one can be guilty under R.C. 2923.03(A)(2) for intentionally assisting another "in committing" a murder, to be guilty of soliciting or procuring another to commit a murder under R.C.2923.03(A)(1), the accomplice must intentionally pressure the principal "to commit" the crime and be something of a motivating force behind the criminal act, and the state must prove this beyond a reasonable doubt.
 {¶ 15} Therefore, we thoroughly reviewed the record to determine whether there was sufficient evidence before the trial court that Rohr-George was the instigator of Zack's murder or that she did something to seek, ask, influence, *Page 7 
invite, tempt, lead on, pressure, get, obtain, induce, bring about, or motivate Zaffino to murder Zack.
 Sufficiency Standard {¶ 16} As will be explained below, there was very little evidence to connect Rohr-George to this murder in any way. This case has attracted heavy media attention, and there has been much public speculation about the role of Rohr-George in the death of Jeff Zack. However, our decision on appeal cannot be driven by public opinion, speculation, or conjecture. We are required to review the conviction of Rohr-George, as we review any criminal conviction, based on the evidence in the trial court record, the legal arguments raised on appeal, and the controlling law. See App.R. 12(A).
 {¶ 17} Rohr-George's challenge to the sufficiency of the evidence is persuasive, as it finds support in both the trial court record and our legal standard of review. The state, as always, carried a heavy evidentiary burden to establish the guilt of Rohr-George beyond a reasonable doubt. In reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most *Page 8 
favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 18} We begin by noting that, although Rohr-George has also challenged the admissibility of some of the evidence admitted at trial, we will assume, for purposes of the sufficiency review, that all of the evidence admitted was properly before the court. After carefully scrutinizing the record for evidence from which a reasonable fact finder could conclude that Rohr-George, acting with intent to cause Zack's death, sought, asked, influenced, invited, tempted, led on, pressured, got, obtained, induced, brought about, or otherwise motivated John Zaffino to kill Jeff Zack, we agree with the defense that the state failed to present sufficient evidence. The state presented an abundance of circumstantial evidence to link Zaffino to this murder and to prove, beyond a reasonable doubt, that Zaffino murdered Zack. What the state failed to prove is why Zaffino killed Zack or that Rohr-George said or did anything to solicit or procure Zaffino to commit the crime.
 Circumstantial Evidence {¶ 19} The state attempted to establish its case without any statements from Zaffino or Rohr-George to the police or testimony from either Zaffino or Rohr-George. Zaffino had made a few statements to friends and family, but none relevant to whether Rohr-George sought, asked, influenced, invited, tempted, led on, brought pressure to bear, got, obtained, induced, brought about, or motivated *Page 9 
Zaffino to kill Zack. Moreover, the state presented no evidence that Rohr-George said anything about the crime to anyone. This Court must emphasize that both Zaffino and Rohr-George had a constitutional right to remain silent and it is impermissible to infer guilt from their refusal to speak to authorities or to testify at trial. See, e.g.,Griffin v. California (1965), 380 U.S. 609, 14 L. Ed. 2d 106. Moreover, it was the state's burden to prove Rohr-George's guilt; she had no burden to disprove it. See State v. Luckett (2001), 144 Ohio App.3d 648,663 (Cooney, J., dissenting).
 {¶ 20} Because this case involved two extramarital love affairs, with Rohr-George meeting with each of her lovers in private, there were few witnesses who testified as to what transpired between Rohr-George and either of her lovers. This was particularly true of her relationship with Zaffino. Although some witnesses testified about her long-term, strained relationship with Jeff Zack and the arguments between them, no one gave insight into her newer relationship with Zaffino. Consequently, as with its prosecution of John Zaffino, the state attempted to establish most of its case against Rohr-George through circumstantial evidence.
 {¶ 21} "Circumstantial evidence * * * is proof of facts or circumstances by direct evidence from which [the fact finder] may reasonably infer other related facts which naturally and logically follow according to the common experience of mankind." State v. Blankenship (Sept. 21, 1994), 9th Dist. No. 2815. It is true that circumstantial evidence has the same probative value as direct evidence and *Page 10 
the state need not disprove reasonable theories of innocence. SeeState v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. Nonetheless, the state can establish facts through circumstantial evidence only insofar as reasonable inferences may be drawn from that evidence. Inferences to be drawn from circumstantial evidence are unreasonable or speculative if they are not supported by the surrounding facts in evidence. State v. Thomas, 1st Dist. No. C-010724, at ¶ 17, 2002-Ohio-7333.
 {¶ 22} "The sufficiency of circumstantial evidence to prove a fact or to prove guilt depends, among other things, on whether reason and common sense lead us from the facts proved by real or direct evidence to the fact sought to be proved. * * * [W]hen the connection is so weak or attenuated that no reasonable mind could find proof beyond a reasonable doubt, * * * the proof is insufficient as a matter of law to overcome the presumption of innocence." State v. Bentz (1981), 2 Ohio App.3d 352,355, fn.6; see also, State v. Griffin (1979), 13 Ohio App.3d 376,377-378.
 {¶ 23} Therefore, we have reviewed the record for evidence that lends support to reasonable factual inferences about the role of Rohr-George in the murder and whether any reasonable fact finder could have found, beyond a reasonable doubt, that she solicited or procured Zaffino to kill Zack. *Page 11 
 Motive {¶ 24} Much of the state's evidence against Rohr-George focused on her possible motive to kill Zack. According to the evidence, Rohr-George had been involved in an extramarital affair with Zack for many years, and, unbeknownst to her husband and family, Zack had fathered one of Rohr-George's seven children. Because Zack had threatened to take the child away from her or expose the matter to her husband, Rohr-George had been afraid to end her relationship with Zack. Although there was evidence before the court that Rohr-George had ended her relationship with Zack during early May 2001, construing the evidence in favor of the state, there was also evidence that Zack was still in love with Rohr-George, that he did not want to give her up, and that he wanted to have a relationship with their child. Assuming, without deciding, that this evidence was sufficient to establish that Rohr-George may have had a motive to kill Zack, motive alone was not sufficient to prove that Rohr-George committed a crime.
 {¶ 25} "Proof of motive * * * does not establish guilt." State v.Nichols (1996), 116 Ohio App.3d 759, 764, citing Fabian v. State (1918),97 Ohio St. 184, 189. "`Motive is not an element of the crime of homicide required to be established to warrant a conviction.'" State v.Lancaster (1958), 167 Ohio St. 391, 397, quoting Fabian. Although proof of motive may be used to strengthen an inference that a criminal act was committed, "`[i]t is only * * * when such act is established by other evidence, that the question of motive can be applied to give *Page 12 
corroboration and assurance to the conclusions drawn from other evidential facts.'" (Citations omitted.) Nichols,116 Ohio App.3d at 764-765.
 {¶ 26} Another motivational factor amongst the principals is significant in this case. If Zaffino had been a stranger having no motive to kill Zack, it could be argued that an inference arises that Rohr-George must have solicited him to do it, because she was the only one of the two having a motive to kill Zack. As a lover newly coming upon the scene, however, Zaffino had a motive to want his competition out of that scene. Moreover, Zaffino might have wanted to be his lover's hero and take it upon himself to end her problem with Zack. Although Rohr-George's motive may have been stronger, Zaffino also had potential motivation to kill Zack and he does not fall within the same category as a stranger or hired "hit man." The fact that Zaffino had his own reasons to kill Zack negates any argument that Rohr-George "must have" solicited him to kill Zack.
 Criminal Conduct Required {¶ 27} Regardless of whether the evidence established that Rohr-George had a motive to kill Zack, the state was required to prove that she said or did something to intentionally solicit or procure Zaffino to accomplish that result. To establish that a defendant solicited or procured another to commit a crime, the state must present evidence, such as actions taken by the defendant or statements made by her, from which a fact finder could reasonably infer that she solicited or procured another to commit the crime. See State v. Urbin,148 Ohio App.3d 293, *Page 13 
302-303, 2002-Ohio-3410, at ¶ 37-38; State v. Lyons (July 6, 2000), 8th Dist. No. 76514 (witnesses testified that the appellant gave directions to others to commit the crime). A conviction required evidence that Rohr-George said or did something to actively and purposefully motivate Zaffino to kill Zack.
 {¶ 28} The state does not necessarily need to present evidence that the defendant made a specific statement to solicit the murder. It must present evidence, however, from which a reasonable fact finder could infer that the defendant, acting with the specific purpose to cause a murder, did something to seek, ask, influence, invite, tempt, lead on, pressure, get, obtain, induce, bring about, or motivate the principal to commit the murder. We need not answer the hypothetical question of what evidence would have been "good enough" to establish that Rohr-George acted to solicit or procure the murder of Jeff Zack, for it is apparent from the record before us that there is no such evidence to evaluate. The state presented no evidence of anything that Rohr-George said or did from which a reasonable fact finder could have concluded that Rohr-George, acting with the specific intent to cause Zack's death, solicited or procured Zaffino to murder him.
 Rohr-George's Association with Zaffino {¶ 29} The primary evidence of Rohr-George's conduct was simply that, before, during, and after the murder, Rohr-George was closely associated with Zaffino and their meetings and conversations were conducted in private and were *Page 14 
kept secret. Rohr-George was involved in a secret romantic relationship with Zaffino and her association with him around the time of the murder was nothing out of the ordinary.
 {¶ 30} The evidence reasonably established that, at the time of the murder, Rohr-George had been involved in an extramarital affair with Zaffino for approximately one year and that the two of them had made efforts to keep their affair a secret from Rohr-George's husband and the public. They met in private and the state established circumstantially that Zaffino communicated frequently with Rohr-George via a secret cellular telephone number. Zaffino had two cellular telephone numbers, both in his name, and the state presented other evidence to support an inference that one of the phones was used by Zaffino and the other was used by Rohr-George. Rohr-George had another cell phone number that she used for communicating with her family and others; her secret line was used almost exclusively for calls to and from Zaffino.
 {¶ 31} The efforts of Zaffino and Rohr-George to keep their affair a secret may have contributed to the air of suspicion surrounding Rohr-George, but, because Rohr-George kept her affair private, the state presented no witnesses who were able to testify concerning what Zaffino and Rohr-George did together or what they talked about.
 {¶ 32} It would be impermissible to infer guilt from the mere fact that Rohr-George was romantically involved with the murderer, or that she was *Page 15 
cheating on her husband in the process. "A defendant cannot be adjudged guilty on the ground that he or she associates with bad people" or because she herself is a bad person. State v. Keenan (1993),66 Ohio St.3d 402, 409-410. To infer "guilt by association" or to infer guilt from one's poor character is contrary to fundamental notions of due process. Id. The law requires that criminal convictions be based on direct or circumstantial evidence of criminal conduct, which was committed with the requisite criminal state of mind. Neither Rohr-George's relationship with Zaffino nor her own character flaws established that Rohr-George had committed the crime with which she was charged.
 {¶ 33} The state's evidence to link Rohr-George to the murder was that she was romantically involved with the murderer, she spoke to him several times a day on the telephone, and she provided financial support to him, which included $5,300 to purchase the motorcycle that Zaffino drove to and from the murder scene. As will be explained below, however, none of this evidence was sufficient to support even a reasonable inference that Rohr-George solicited or procured Zaffino to kill Zack.
 The Phone Calls {¶ 34} The state placed great emphasis on the many cellular telephone calls between Zaffino and Rohr-George, the vast majority of which were initiated by Zaffino, particularly on the day of the murder. Construing the evidence in favor of the state, Zaffino was in continual telephone communication with Rohr-George *Page 16 
during the days and months surrounding the murder, including the day of the murder. The mere fact that they spoke often on the day of the murder was not unusual. During the months surrounding the murder, they spoke to each other numerous times a day.
 {¶ 35} The state had also argued that the absence of phone calls during the time of the murder implicated Rohr-George, creating an inference that she did not call Zaffino at the time of the murder because she knew that he was killing Zack. It was Zaffino who initiated all of the phone calls close to the time of the murder, however; Rohr-George did not make any of the phone calls during the morning or afternoon of the murder. The absence of phone calls during the time of the murder did tend to implicate Zaffino, but it did not support any inferences about Rohr-George's possible role in the murder.
 {¶ 36} Moreover, even if it could be inferred from the gap in phone calls that Rohr-George knew about the murder beforehand, prior knowledge of a crime does not make one an accomplice. See State v. Woods (1988),48 Ohio App.3d 1, 8. Even if there is proof that a defendant acquiesced in the crime and benefited from it (as the state suggested Rohr-George benefited from Zack's death), where the state fails to prove that the defendant asked the principal to commit the crime, R.C. 2923.01(A)(1) is "clearly inapplicable." State v. Burrell (Sept. 14, 2000), 8th Dist. No. 76890. *Page 17 
 {¶ 37} The many phone calls between Zaffino and Rohr-George do not reasonably lead to inferences that Rohr-George solicited or procured Zaffino to kill Zack. There was no evidence presented about what the two had discussed or what either of them said. There was no testimony from witnesses who overheard one or both of them on the phone, and neither repeated anything that was said. Without some additional evidence to provide insight into the content of the conversations between Zaffino and Rohr-George, it would be purely speculative to come to any conclusion about what they were saying during these phone calls.
 {¶ 38} Therefore, the many phone calls between Zaffino and Rohr-George were merely more evidence that they had a secret relationship together. The phone calls did not provide any evidence that Rohr-George solicited or procured Zaffino to murder Jeff Zack.
 Financial Contributions {¶ 39} The state also presented direct and circumstantial evidence that Rohr-George gave money to Zaffino for several purposes, as she had done with her prior lover, Jeff Zack. There was evidence that Rohr-George financially assisted Zaffino in business ventures, she sometimes paid his cellular telephone bill, she gave him the money to purchase the motorcycle that he later used to drive to and from the murder scene, and she gave him money after the murder occurred.
 {¶ 40} Although the state attempted to prove that Rohr-George gave Zaffino the money that he used to purchase the murder weapon, the record is *Page 18 
devoid of any evidence to support such an inference. Zaffino did not tell any of the state's witnesses where he got the money, nor was there any evidence presented to give insight into where the money came from. The state presented no evidence that the money came from Rohr-George and to make such an inference from the evidence presented would be pure speculation. Moreover, even if the money had come from Rohr-George, there was no evidence to suggest that Rohr-George had any knowledge about the gun or even that she knew Zaffino wanted to purchase a gun.
 Purchase of Motorcycle {¶ 41} The state did present circumstantial evidence to support a reasonable inference that Rohr-George gave Zaffino $5,300 to purchase a motorcycle, which he used three weeks later to drive to and from the scene of the murder. The state also presented evidence that, when Zaffino first came to the motorcycle store 13 days earlier, he used a fictitious name and he made a statement that he did not plan to keep the motorcycle for long. At that time, Zaffino was accompanied by a woman, but no witnesses were able to identify the woman as Rohr-George.
 {¶ 42} The state wanted the fact finder to infer from that evidence not only that Rohr-George financed the purchase of the motorcycle, but that she had accompanied Zaffino when he shopped for it and was aware that he used a false name and did not plan to keep it for long because he planned to use the motorcycle to kill Zack and then dispose of it. Even if such inferences could be drawn from *Page 19 
this evidence, they certainly do not establish beyond a reasonable doubt that Rohr-George had solicited or procured Zaffino to commit the murder. At best, this evidence could establish that Rohr-George knowingly or intentionally financed the purchase of the getaway vehicle. Such conduct might have amounted to assistance, but without some additional facts to support such an inference, it does not logically follow that Rohr-George gave Zaffino money for a motorcycle with the intent to solicit or procure him to kill Zack. Such a conclusion would be based on mere speculation, not on facts in evidence.
 {¶ 43} Having carefully reviewed the record for any evidence from which a fact finder could reasonably infer that Rohr-George intentionally solicited or procured John Zaffino to kill Jeff Zack, we were unable to find anything. Because there was not sufficient evidence to establish that Rohr-George solicited or procured John Zaffino to kill Jeff Zack, her third assignment of error is sustained. The judgment is reversed and the cause remanded to the trial court for it to enter an order discharging the defendant, and such further orders as are consistent with this opinion.
 {¶ 44} Given that our disposition of the third assignment of error renders the remaining assignments of error moot, they will not be addressed. See App.R. 12(A)(1)(c).
 Judgment reversed and the cause remanded. *Page 20 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
WILLIAM R. BAIRD FOR THE COURT
WHITMORE, J. CONCURS