[Cite as *State v. Null*, 2022-Ohio-3338.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 21-CA-000012 |
| KATELYN NULL | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING: Criminal appeal from the Guernsey County
Court of Common Pleas, Case No.
20CR000206

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: September 21, 2022

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JASON R. FARLEY                         JACOB T. WILL
Assistant Prosecutor                      121 South Main Street, Ste. 520
627 Wheeling Avenue                     Akron, OH 44308
Cambridge, OH 43725

*Gwin, P.J.*

{¶1}  Defendant-appellant Katelan M. Null ["Null"] appeals her conviction and sentence after a jury trial in the Guernsey County Court of Common Pleas.

*Facts and Procedural History*

{¶2}  Null and the decedent Alexander Anderson agreed to a trade of vehicles. 3T. at 532.[1]  Null traded a motorcycle in exchange for Anderson's Pontiac G6.  Id. However, the motorcycle developed mechanical problems.  Anderson called Null and asked her to return the Pontiac G6.  3T. at 531-532.  Null declined to return the automobile prompting Anderson to tell her that he would come over and pick it up.  Id. at 352.

{¶3}  In the evening of August 22, 2020, Anderson called his friend Paige Willis for a ride.  Willis took Anderson to her house, where they did methamphetamine.  During the early morning hours of August 23, 2020, Anderson began texting with Null.  Willis agreed to drive Anderson from Licking County to Guernsey County on the morning of August 23, 2020 to retrieve Anderson's car.

{¶4}  Anderson was driving Willis's vehicle in a rural area of Guernsey County. While Willis was giving Anderson a "blow job," Anderson lost control of the car and it became wedged between trees in a ditch.  Anderson told Willis his Pontiac G6 was right up the road, and he would walk to retrieve his car.  After he retrieved his car, they could figure out what to do about Willis's car.

{¶5}  While Anderson and Willis were trying to figure out how to get her car out, a silver pick-up truck pulled up and the occupant asked if they needed help.  2T. at 298.

---

[1] For clarity, the jury trial transcript will be referred to as, "__T.__," signifying the volume and the page number.

The sole occupant of the truck indicated that he lived on a nearby farm and that he would return in about an hour to help. Id. at 299. After concluding that they could not summon help due to the lack of cell phone service in the area, Anderson walked down the road to retrieve his car.

{¶6} In the meantime, Null and Daniel Welch had driven the Pontiac G6 to Columbus, Ohio to buy drugs. 3T. at 532. As they were returning from the trip, Null saw Anderson on the front porch of the residence where she and Welch had been staying located at 76557 Zion Road. Id. Welch's grandmother, Susan Bliss owned and resided at the residence. 3T. at 493-494.

{¶7} Daniel left the car, spoke to his grandmother, and went inside the residence. 3T. at 532. Null told Lieutenant Sam Williams of the Guernsey County Sheriff's Office that Anderson came over to the car. 3T. at 533. Null refused to get out of the Pontiac G6 and an argument ensued. Null told the Lieutenant that Anderson pulled a gun and she exited the car. Anderson got into the car and drove away. Null admitted to the police that she called Anderson's brother Anthony and told him that there was an altercation and "she was going to have him jumped and it was going to be bad." 2T. at 266; 3T. 533-537.

{¶8} Anderson returned to Willis at the scene of the crash about an hour from the time he had left to retrieve his car from Null. He told Willis that he and Null "had words." 2T. at 300.

{¶9} Kasey Means testified that on the morning of August 23, 2020, she and Jacob Harper were going to travel to Coshocton, Ohio so she could attend a scheduled visitation with her daughter. 2T. at 343-344. Means was driving a black

SUV. Instead of turning onto Eighth Street as they normally do Harper told Means to continue straight on Zion Road. 2T. at 346. As they traveled down Zion Road, they came across the Pontiac G6 in the ditch. Anderson declined Means' offer for help. Harper got out of the SUV. Anderson stated he got his car from Null at Daniel Welch's house. Harper also knew Daniel. Anderson told Harper he was Daniel's "plug," slang for drug dealer. 2T. at 307. Means and Harper then drove to Harper's father's home on Euga Road. 2T. at 348. While at the home, Joshua Jackson gets into the SUV and they drive back to the scene of the accident. 2T. at 349-350.

{¶10} Harper exited the SUV and began speaking with Anderson. The conversation was not hostile or aggressive. Means saw Harper begin to get irritated, and heard Harper say to Anderson, "You know what it is." 2T. at 352. Harper was holding a gun to Anderson. Anderson did not have a gun. Means testified Harper shot Anderson once. As Anderson backed away, Harper shot him two more times. Harper then jumped in the car and told Means to drive away.

{¶11} Willis testified that she was putting her bags into Anderson's car, and heard a "pop pop" sound like a gun. 2T. at 319. She saw Anderson stumbling backwards, and then heard more shots. Harper got in the black SUV, and it drove away. Anderson fell partly into the vehicle. He told Willis he was dying.

{¶12} Willis heard the black SUV stop. When Anderson heard the SUV stop, he told Willis to leave. Unable to pull Anderson into the vehicle, Willis pushed him out of the vehicle, and drove away. Willis called 911, and led police to where Anderson's dead body was found lying in the road.

{¶13} Means testified that while in the vehicle after the incident, Harper took her phone from her, that she never saw her phone again, and that she saw Harper on his phone "nonstop." 2T. at 381-382.

{¶14} Null's phone had been recovered as part of the investigation. During a Celebrite extraction two text messages are recovered that read, "It is a tall, light-skinned dude with a car in the ditch somewhere close to your spot, rob him" and "he is strapped, but he is ASF" 3T. at 434. In an interview with Lieutenant Sam Williams of the Guernsey County Sheriff's Office Null admitted sending those messages to Jacob Harper. 3T. at 533-537.

{¶15} On October 8, 2020, Null was indicted on one count of Conspiracy to Aggravated Murder, a felony of the first degree, in violation of R.C. 2923.01 (A)(2), Conspiracy to Aggravated Robbery, a felony of the second degree, in violation of R.C. 2923.01(A)(2), Conspiracy to Felonious Assault, a felony of the third degree, in violation of R.C. 2923.01(A)(2), one count of Complicity in the Commission of Aggravated Murder, an unclassified felony in violation of R.C. 2923.03(A)(1), one count of Complicity in the Commission of Murder, an unclassified felony in violation of R.C. 2903.02, one count of Complicity in the Commission of Felonious Assault, a felony of the second degree, in violation of R.C. 2923.03(A)(1), and one count of Having Weapons While Under Disability, a felony of the third degree, in violation of 2923 .13(A)(3).

{¶16} Prior to trial, the state dismissed the Conspiracy to Aggravated Murder, Conspiracy to Aggravated Robbery, Conspiracy to Felonious Assault, and Having Weapons While Under Disability counts.

{¶17} The jury returned verdicts of guilty on the following charges: Complicity in the Commission of an Offense Involuntary Manslaughter (a lesser-included charge), Complicity in the Commission of an Offense (Murder), and Complicity in the Commission of an Offense (Felonious Assault).

{¶18} At sentencing, the trial court merged the counts. The state elected to proceed on the complicity to murder count. Null was sentenced to an indefinite term of 15 years to life. Pursuant to R.C. 2903.41, et seq., the court found Null to be a Violent Offender and notified her in open court of her duties to register and report. Null was further notified in open court that post-release control is mandatory in this case for five years, as well as the consequences for violating conditions of post-release control imposed by the Parole Board under Revised Code Section 2967.28 and 2929.141.

*Assignments of Error*

{¶19} Null raises two Assignments of Error.

{¶20} "I. APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION.

{¶21} "II. THE JURY'S FINDING OF GUILT AS TO ALL THREE CHARGES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."

I & II

{¶22} In her First Assignment of Error, Null argues that that there is insufficient evidence to support her conviction. Further, in her Second Assignment of Error, Null contends the conviction is against the manifest weight of the evidence.

**Standard of Appellate Review– Sufficiency of the Evidence.**

**{¶23}**  The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).  The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.  "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

**{¶24}**  When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30.  "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus.  *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19.  Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'"  *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001),

*quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Null was guilty beyond a reasonable doubt of Complicity in the Commission of the Offense of Murder*

**{¶25}** In the case at bar, the state elected to proceed on the complicity to murder conviction. Sent. T. at 15. Null contends the sole evidence to support the complicity charge consisted of two text messages found on Null's cell phone. Null argues the record is void of any evidence that any of the messages sent from Null's phone were ever received by Harper.

**{¶26}** Null was convicted of complicity under R.C. 2923.03(A)(1), which provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [s]olicit or procure another to commit the offense [.]" Thus, the state was required to prove, beyond a reasonable doubt, that Null, acting with the specific intent to cause Anderson's death, solicited or procured Harper to kill Anderson and that Harper did, in fact, kill him. Null does not dispute the state's proof that Harper killed Anderson. Her sole challenge is that there was insufficient evidence before the trial court that she intentionally solicited or procured Harper to commit the murder.

**{¶27}** "Solicit means to seek, to ask, to influence, to invite, to tempt, to lead on, to bring pressure to bear." The definition is taken from 4 Ohio Jury Instructions (2004) 573, Section 523.03(6) and (7). *State v. Skates,* 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶68; *State v. Rohr-George,* 9th Dist. Summit No. 23019, 2007-Ohio-1264, ¶13. *See also, State v. Attia,* 11th Dist. Lake No. 2021-L-003, 2021-Ohio-2890, ¶64. The state is not required to present evidence of a "specific statement to solicit the murder."

> It must present evidence, however, from which a reasonable fact finder could infer that the defendant, acting with the specific purpose to cause a murder, did something to seek, ask, influence, invite, tempt, lead on, pressure, get, obtain, induce, bring about, or motivate the principal to commit the murder.

*State v. Rohr-George,* 9th Dist. Summit No. 23019, 2007-Ohio-1264, ¶28; *State v. Attia,* 11th Dist. Lake No. 2021-L-003, 2021-Ohio-2890, ¶ 99.

**{¶28}** Contrary to Null's assertions, sufficient evidence was presented to prove beyond a reasonable doubt Null successfully solicited Harper to commit a criminal offense.

**{¶29}** In *State v. Jester*, 32 Ohio St.3d 147, 152, 512 N.E.2d 962, 968 (1987), the Ohio Supreme Court held:

> Where an inherently dangerous instrumentality was employed, a homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended. Such evidence is sufficient to allow a jury to find a purposeful intent to kill. *State v. Clark*

(1978), 55 Ohio St.2d 257, 9 O.O.3d 257, 379 N.E.2d 597, syllabus; *State v. Johnson* (1978), 56 Ohio St.2d 35, 10 O.O.3d 78, 381 N.E.2d 637. *Accord, State v. Widner*, 69 Ohio St.2d 267, 431 N.E.2d 1025 (1982) (finding purpose to kill in passenger's firing gun at individual from moving vehicle); *State v. Dunlap*, 73 Ohio St.3d 308, 316, 652 N.E.2d 988 (1995), *certiorari denied* (1996), 516 U.S. 1096, 116 S.Ct. 822, 133 L.Ed.2d 765. *State v. Banks*, 10th Dist. No. 01AP–1179, 2002-Ohio-3341, ¶ 24.

The trier of fact may infer an intention to kill from the surrounding circumstances where the natural and probable consequence of a defendant's actions is to produce death. *State v. Robinson* (1954), 161 Ohio St. 213, 118 N.E.2d 517, paragraph five of the syllabus; *State v. Edwards* (1985), 26 Ohio App.3d 199, 200, 499 N.E.2d 352. Here, defendant looked at a group of individuals, pointed a semi-automatic handgun in their direction, and fired five shots. In so doing, one of the bullets fired from the handgun struck and killed his driver, Andre J. Bender. Although defendant claims the evidence equally supports a conclusion that he was merely trying to scare individuals in the group by firing the handgun into the air, "[t]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." *State v. Brown* (Feb. 29, 1996), Cuyahoga App. No. 68761 [1996 WL 86627], unreported. *Compare State v. Jester* (1987), 32 Ohio St.3d 147, 152, 512 N.E.2d 962 (when an inherently dangerous instrumentality is employed in the commission of a robbery, such evidence permits a jury to find a purposeful intent to kill).

*State v. Turner*, 10th Dist. No. 97APA05–709, 1997 WL 798770 (Dec. 30, 1997), *quoting State v. Brown*, 8th Dist. No. 68761, 1996 WL 86627 (Feb. 29, 1996) *dismissed, appeal not allowed,* 77 Ohio St.3d 1468, 673 N.E.2d 135.

**{¶30}** In the case at bar, circumstantial evidence was presented that Harper did in fact receive and read Null's text messages.

**{¶31}** Null admitted to the police that she called Anderson's brother Anthony and told him that there was an altercation and "she was going to have him [Anderson] jumped and it was going to be bad." 2T. at 266; 3T. at 533-537. In an interview with Lieutenant Sam Williams of the Guernsey County Sheriff's Office Null admitted sending two messages to Jacob Harper., i.e., "It is a tall, light-skinned dude with a car in the ditch somewhere close to your spot, rob him" and "he is strapped, but he is ASF." 3T. at 434; 533-537; 540.

**{¶32}** Instead of turning onto Eighth Street as they normally do Harper told Means to continue straight on Zion Road. 2T. at 346. Harper left the accident scene and drove to his father's home, where Joshua Jackson accompanied Harper and Means back to the accident scene. Harper was on his cell phone at various times throughout the time he initially encountered Anderson and Willis and the time he returned to the scene. 2T. at 366; 384-385; 386-387. Forensic evidence was presented that the two text messages were sent from Null's cell phone to Harper's cell phone. 3T. at 430-433.

**{¶33}** If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *State v. Jenks*, 61 Ohio

St.3d 259, 273, 574 N.E.2d 492 (1991), at paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds in State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997).*

{¶34} "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" *Jenks*, paragraph one of the syllabus. Furthermore, "'[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Jenks*, at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), *citing Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 331, 130 N.E.2d 820.(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, *citing Hurt*, 164 Ohio St. at 331, 130 N.E.2d 820.

{¶35} The record establishes that it was Null's intent to have Harper jump Anderson in order to rob him. It is further evident that Null intended it "to be bad." Null further texted Harper warning him that Anderson had a gun.

{¶36} Based upon this evidence, we find a trier of fact reasonably could infer that in texting Harper to jump and rob Anderson and that Anderson was armed, Null was aware that Harper would arm himself before he confronted Anderson. Furthermore, under these circumstances, we find a trier of fact reasonably could infer Null acquiesced in the use of a gun.

**{¶37}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Anderson's murder was a natural and probable consequence given the force and violence called for by Null. Null created circumstances that in all probability would endanger human life.

**{¶38}** We hold, therefore, that the state met its burden of production regarding each element of the crime of complicity to murder and, accordingly, there was sufficient evidence to support Null's conviction.

### Standard of Appellate Review – Manifest Weight.

**{¶39}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

> * * *

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with

the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶40}** The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

**{¶41}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist.

1983).  Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."  Id.

**Issue for Appellate Review**:  *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.*

**{¶42}**  The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."  *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996).  Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true.  *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).  Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.  *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

**{¶43}**  In the case at bar, the jury heard the witnesses subjected to cross-examination. The jury heard Null's admissions made to the police during her interview.

The jury heard Null's attorney's arguments and explanations about the evidence and her actions.  Thus, a rational basis exists in the record for the jury's decision.

**{¶44}**  We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355, quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.  Based upon the foregoing and the entire record in this matter we find Null's conviction is not against the sufficiency or the manifest weight of the evidence.  To the contrary, the jury appears to have fairly and impartially decided the matters before them.  The jury heard the witnesses, evaluated the evidence, and was convinced of Null's guilt.  The jury neither lost their way nor created a miscarriage of justice in convicting Null of the offense.

**{¶45}**  Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Null was convicted.

**{¶46}**  Null's First and Second Assignment of Error are overruled.

{¶47}  The judgment of the Guernsey County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur